# IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO EASTERN DIVISION

WILLIAM HOWARD O'BANNON, JR.,

        Plaintiff,                          **Civil Action 2:16-cv-1043**

                                          **Judge Michael H. Watson**

        v.                            **Magistrate Judge Chelsey M. Vascura**

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

## REPORT AND RECOMMENDATION

Plaintiff O'Bannon brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his applications for disability insurance benefits and supplemental security income. This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 18), the Commissioner's Memorandum in Opposition (ECF No. 22), Plaintiff's Reply (ECF No. 23), and the administrative record (ECF No. 11). For the reasons that follow, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

## I.     BACKGROUND

Plaintiff filed his applications for disability insurance benefits and supplemental security income on September 19, 2013, alleging that he had been disabled since March 1, 2012, due to a combination of physical and mental impairments. On June 29, 2015, following initial administrative denials of his application, Plaintiff sought a *de novo* hearing before an administrative law judge.

A hearing was held before Administrative Law Judge Jason C. Earnhart (the "ALJ"), at which Plaintiff, represented by counsel, appeared and testified. (ECF No. 11 at PAGEID ##79-135). Plaintiff testified that he has been raising his eleven-year-old daughter since she was two. He helps her with her homework, but his sister comes and helps him some days when the pain in his toes is too great. He said that he likes to read a lot of books and that he regularly attends Alcoholics Anonymous meetings. He also takes care of his dog. Plaintiff testified that he has about twenty years of painting experience and that he also worked as a meat packer. He said that he currently volunteers with his church helping coach young children.

Vocational Expert George Coleman (the "VE") also appeared and testified. He stated that Plaintiff's past relevant work included painting, which the VE classified as skilled with an SVP level of 7; and meat packing, which the VE classified as unskilled, with an SVP level of 2. The VE then testified that a hypothetical individual of Plaintiff's age, education, and work experience who retained the residual functional capacity ("RFC")[1] that the ALJ ultimately assessed could perform Plaintiff's past work as a meat packer both as Plaintiff performed it and as that job is typically performed. The VE also identified several other jobs that exist in significant numbers in the national economy that the hypothetical individual could perform with the foregoing RFC and also with an RFC that restricted the individual to light work.

On August 12, 2015, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (*Id*. at PAGEID## 60-73). At step two of the

---

[1] A claimant's RFC is an assessment of "the most [she] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1).

sequential evaluation process,[2] the ALJ found that Plaintiff had the following severe impairments: a depressive disorder; an anxiety disorder; and deformity of his feet, status post repair. The ALJ concluded that Plaintiff did not, however, have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. He specifically identified Listings 1.02, 1.04, 12.06, and 12.06 as Listings he considered. With respect to Listings 12.04 and 12.06, the ALJ concluded that Plaintiff did not satisfy the paragraph B criteria because his "none of the functional limitation categories are manifested to a degree which satisfies the full requirements of such listings." (*Id*. at PAGEID# 63). The ALJ proceeded to offer a lengthy discussion of the paragraph B criteria.

At step four of the sequential process, the ALJ set forth Plaintiff's RFC as follows:

> [Plaintiff] has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(b) and 416.967(b) except occasional use of both feet to operate foot controls. Mentally, [Plaintiff] can perform simple, routine and repetitive tasks. [Plaintiff] can perform low stress work defined as requiring no

---

[2] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 416.920(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009);

more than occasional changes in the work setting. [Plaintiff's] social functioning is limited, but adequate for occasional interaction with the public, co-workers, and supervisors.

(*Id*. at PAGEID# 65). Relying on the VE's testimony, the ALJ concluded that Plaintiff was capable of performing his past relevant work as a meat packer. The ALJ alternatively concluded that Plaintiff was capable of performing other jobs that exist in significant numbers in the national economy. He therefore concluded that Plaintiff was not disabled under the Social Security Act during the relevant period.

In his Statement of Errors (ECF No. 18), Plaintiff asserts that the ALJ erred in failing to consider his intellectual impairment. More specifically, Plaintiff contends that the ALJ erred at step two by failing to consider the limiting effects of his intellectual impairment and again at step three in failing to consider whether his impairments met or equaled Listing 12.05(C).

In her Memorandum in Opposition (ECF No. 22), the Commissioner asserts that any such error was harmless. The Commissioner further submits that Plaintiff has failed to satisfy his burden to demonstrate that he could not perform his past work or that he could satisfy the diagnostic criteria of Listing 12.05(C).

In his Reply (ECF No. 23), Plaintiff emphasizes that the ALJ failed to consider his intellectual impairment and submits that the Commissioner is impermissibly offering post-hoc rationalization.

## II.  STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C.

4

§ 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)), *cert. denied sub. nom. Paper, Allied-Indus., Chem.& Energy Workers Int'l Union v. TNS, Inc.* 537 U.S. 1106 (2003). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007).

### III. ANALYSIS

As set forth above, Plaintiff asserts that the ALJ erred at step two in failing to consider his intellectual disability and at step three in failing to consider whether his intellectual impairment met or equaled Listing 12.05(C). The undersigned addresses each of these contentions of error in turn.

**A.     The ALJ's Step-Two Findings**

A severe impairment is defined as "any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities," 20 C.F.R. §§ 404.1520(c), 416.920(c), and which lasts or can be expected to last "for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

At step two of the sequential evaluation process, Plaintiff bears the burden of proving the existence of a severe, medically determinable impairment that meets the twelve-month durational requirement. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003); *Harley v. Comm'r of Soc. Sec.*, 485 F. App'x 802, 803-04 (6th Cir. 2012). The United States Court of Appeals for the Sixth Circuit has construed a claimant's burden at step two as "a *de minimis* hurdle in the disability determination process." *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988). The inquiry is therefore "employed as an administrative convenience to screen out claims that are 'totally groundless' solely from a medical standpoint." *Id.* at 863 (quoting *Farris v. Sec'y of Health & Hum. Servs.*, 773 F.2d 85, 90 n.1 (6th Cir. 1985).

Where the ALJ determines that a claimant had a severe impairment at step two of the analysis, "the question of whether the ALJ characterized any other alleged impairment as severe or not severe is of little consequence." *Pompa*, 73 F. App'x 801, 803 (6th Cir. 2003). Instead, the pertinent inquiry is whether the ALJ considered the "limiting effects of all [claimant's] impairment(s), even those that are not severe, in determining [the claimant's] residual functional capacity." 20 C.F.R. § 404.1545(e); *Pompa*, 73 F. App'x at 803 (rejecting the claimant's argument that the ALJ erred by finding that a number of her impairments were not severe where the ALJ determined that claimant had at least one severe impairment and considered all of the claimant's impairments in her RFC assessment); *Maziarz v. Sec'y of Health & Hum. Servs.*, 837

F.2d 240, 244 (6th Cir. 1987) (same).

Here, the undersigned concludes that even if the ALJ erred in failing to identify an intellectual impairment as severe, that error was harmless because the ALJ concluded that Plaintiff had severe mental impairments and considered Plaintiff's intellectual functioning in connection with his mental RFC assessment. *See Maziarz*, 837 F.2d at 244. In assessing Plaintiff's mental limitations, the ALJ considered Plaintiff's intellectual functioning, including the cognitive assessment that Consultative Examiner Gregory Johnson, Ph.D., performed, which "suggested low average range to borderline intellectual functioning."[4] (PAGEID## 67, 428). The ALJ also considered that Plaintiff reported on his "Disabilty Report—Adult" that he completed the 12th grade and did not attend any special education classes. (PAGEID# 66). The ALJ also observed that:

> [Plaintiff] graduated from high school and reads, writes, speaks and understands English. [Plaintiff] demonstrated that abilities to follow simple commands and instructions and understand conversational speech at the December 2013 consultative psychological evaluation. He was able to attend closely and fully to the hearing proceedings and respond appropriately to questions, without any observable interference from his alleged mental or physical symptoms.

(PAGEID# 68 (internal citations to the record omitted)). The ALJ detailed Plaintiff's activities of daily living, concluding that Plaintiff's "level of adaptive functioning is very high . . . ." (PAGEID## 64, 68). In addition, the ALJ noted the VE's testimony that Plaintiff's past relevant work includes work at the skilled level SVP 7. (PAGIED# 70.) The ALJ also accorded great weight to the opinions of state-agency reviewing physicians Gary Hinzman, M.D., and William Bolz, M.D. Both Drs. Hinzman and Bolz opined that Plaintiff's had a severe mental impairment, but neither found that he had a severe intellectual impairment. Finally, the ALJ expressly indicated that he had considered the May 4, 2015, brief Plaintiff's counsel had submitted.

---

[4]Notably, Dr. Johnson did not diagnose an intellectual impairment.

(PAGEID# 70 (citing Exhibit No. 17E)).  In this brief, Plaintiff's counsel highlights the evidence in the record that he contends supports a finding that Plaintiff suffers from "mild retardation/intellectual disability," as well as other impairments that he maintains render Plaintiff markedly impaired in several categories of functioning.  (PAGEID## 337-38).  The ALJ concluded that the records relating to the impairments identified "fail to include any limitations that would exceed those assessed within this decision."  (PAGEID# 70).

As set forth above, "[t]hrough step four, Plaintiff bears the burden of proving the existence and severity of limitations caused by [his] impairments and the fact that [he] is precluded from performing [his] past relevant work . . . ." *Jones*, 336 F.3d at 474.  The undersigned concludes that the ALJ did not err in concluding that Plaintiff had failed to satisfy that burden here.  Plaintiff cites to IQ scores years before his alleged onset, the first of which was in 1994 during which Plaintiff reported being disabled "because of alcohol and drugs" and reported feeling hung over after drinking two twelve packs of beer the day before (PAGEID## 395-401); and the second of which was in 2006, and the examiner considered but declined to diagnose an intellectual impairment (PAGEID## 402-408).  The undersigned concludes that these records are insufficient to establish that Plaintiff required limitations greater than the ALJ assessed.  Further, as the Commissioner points out, Plaintiff has offered no evidence that his intellectual impairment worsened after his alleged onset date such that it would prevent him from performing his past relevant work as a meat packer.

In sum, the undersigned concludes that any error the ALJ committed at step two was harmless and that the ALJ reasonably assessed Plaintiff's RFC and concluded that Plaintiff could perform his past relevant work as a meat packer.  It is therefore **RECOMMENDED** that the Court **OVERRULE** Plaintiff's first contention of error.

**B.      The ALJ's Listing Consideration**

Within this contention of error, Plaintiff maintains that the ALJ erred in failing to evaluate whether he met or equaled Listing 12.05(C).  The undersigned finds this contention of error to be likewise without merit.

Listing 12.05(C) requires a claimant to prove each of the following four essential elements:

> (1) "significantly sub-average general intellectual functioning," (2) "deficits in adaptive functioning," (3) evidence that the condition began before age twenty-two[,] and (4) a valid IQ score of seventy or below along with a "physical or other mental impairment imposing an additional and significant work-related limitation."

*Sheeks v. Comm'r of Soc. Sec.*, 544 F. App'x 639, 641 (6th Cir. 2013) (quoting 20 C.F.R., Pt. 404 Subpt. P, App. 1 § 12.05(C)).  A claimant's impairment must meet every element of a Listing before the Commissioner may conclude that he or she is disabled at step three of the sequential evaluation process.  20 C.F.R. 404 Subpt. P, App. 1 § 12.05.  *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001); *Duncan v. Sec'y of Health & Hum. Servs.*, 801 F.2d 847, 855 (6th Cir. 1986); *cf. McClellan v. Astrue*, 804 F.Supp.2d 678, 682 (E.D. Tenn. 2011) ("[A] qualifying IQ score is not enough to satisfy Listing 12.05[;] . . . a claimant must also meet the elements of the diagnostic description.").

To succeed on this contention of error, Plaintiff must show that "the ALJ's decision leaves open the question whether he meets listing 12.05(C)" and that this "question is a *substantial* one that justifies a remand."  *Sheeks*, 544 F. App'x at 641-42 (citing *Abbott v. Sullivan*, 905 F.2d 918, 925 (6th Cir. 1990) (emphasis in original)).  In *Sheeks*, the Sixth Circuit concluded that remand was not required where the claimant had made "only a tenuous case for meeting listing 12.05(C)."  *Id*. at 642.  By way of example, the *Sheeks* Court examined the

requirement of onset before age twenty-two and concluded that the claimant failed to supply sufficient evidence to show significantly subaverage general intellectual functioning where he pointed only to his special education classes and failure to finish high school, but did "not flag record evidence showing that he had trouble caring for himself of handling social situations before age twenty-two." *Id*. Such is the case here.

Like the claimant in *Sheeks*, Plaintiff states that the "evidence that the impairment existed pre-age 22" is "the fact that special education services were provided in school." (Pl.'s Statement of Errors 12, ECF No. 18.) This is not enough to leave open a "substantial" question that justifies remand. *Sheeks*, 544 F. App'x at 641-42; *Peterson v. Comm'r*, 552 F. App'x 533, 540 (6th Cir. 2014) ("[N]either circumstantial evidence such as school records nor a history of special education combined with an adult IQ score are necessarily enough to demonstrate that a claimant had adaptive functioning deficits before age twenty-two."); *Foster*, 279 F.3d at 352–55 (finding that a ninth-grade education completed through special education classes, followed by numerous unsuccessful attempts at a GED, coupled with an adult full scale IQ of 69, did not establish adaptive functioning deficits prior to age twenty-two). Moreover, as the Commissioner points out, Plaintiff's subsequent work history, which includes skilled work at SVP level 7, likewise undermines his contention that he suffered from the requisite deficits in adaptive functioning during the developmental period. *See*, *e.g.*, *Daniels v. Comm'r*, 70 F. App'x 868, 872-873 (6th Cir. 2003) (concluding that the claimant's graduation from high school and prior work experience undermined her contention that she suffered from significantly subaverage intellectual function or deficits in adaptive functioning during the developmental period); *Justice v. Comm'r*, 515 F. App'x 583, 587 (6th Cir. 2013) (concluding that record evidence of claimant's work history, which included semiskilled and unskilled positions, supported conclusion that the

claimant did not have the requisite deficits in adaptive functioning even though claimant attended special education classes and dropped out after the ninth or tenth grade).

Because Plaintiff has failed to raise a substantial question about whether he meets listing 12.05(C), the ALJ did not commit reversible error in failing to analyze the listing.  It is therefore **RECOMMENDED** that Plaintiff's second contention of error be **OVERRULED**.

## IV.    DISPOSITION

From a review of the record as a whole, the undersigned concludes that substantial evidence supports the ALJ's decision denying benefits.  Accordingly, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM**  the Commissioner of Social Security's decision.

## V.    PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).  A Judge of this Court shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations  to which objection is made.  Upon proper objections, a Judge of this Court may accept, reject, or  modify, in whole or in part, the findings or recommendations made herein, may receive further  evidence or may recommit this matter to the Magistrate Judge with instructions.  28 U.S.C. §  636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision

of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S.

140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE